UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | | |
|---|---|---|
| GE OIL & GAS, INC. | * | CIVIL ACTON NO.: |
| *Plaintiff* | * | |
| | * | |
| *versus* | * | JUDGE |
| | * | |
| TURBINE GENERATION SERVICES, L.L.C., and | * | |
| MICHEL B. MORENO | * | |
| *Defendants* | * | MAG. JUDGE |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

### COMPLAINT FOR COLLECTION OF PROMISSORY NOTE, RECOGNITION OF SECURITY INTERESTS IN COLLATERAL, TURNOVER OF COLLATERAL, AND ENFORCEMENT OF GUARANTY

**NOW INTO COURT**, through undersigned counsel, comes Plaintiff, GE Oil & Gas, Inc. ("**GEOG**"), which respectfully represents as follows:

### PARTIES

1.

Plaintiff, GEOG, is a Delaware corporation with its principle place of business in Houston, Texas. GEOG is a citizen of Delaware and Texas for diversity purposes under 28 U.S.C. §1332.

2.

Defendant Turbine Generation Services, L.L.C. ("**TGS**"), a Louisiana limited liability company with its principal place of business in Lafayette, Louisiana, is wholly owned by MOR DOH Holdings, L.L.C.. The two members of MOR DOH Holdings, L.L.C., are trusts that share a managing trustee, Dalis M. Waguespack. Upon information and belief, Ms. Waguespack resides and maintains her domicile in Louisiana. TGS is a citizen of Louisiana for diversity purposes under 28 U.S.C. § 1332.

3.

Upon information and belief, Defendant Michel B. Moreno ("**Moreno**") resides and maintains his domicile in Lafayette Parish, Louisiana. Moreno is a citizen of Louisiana for diversity purposes under 28 U.S.C. §1332.

## JURISDICTION AND VENUE

4.

This Court has jurisdiction over this proceeding under 28 U.S.C. §1332(a) because the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs, and is between citizens of different states.

5.

This Court has personal jurisdiction over Defendants, as Defendants are conducting business in Lafayette Parish, Louisiana.

6.

Venue is proper in this district under 28 U.S.C. 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this district. Alternatively, a substantial part of property that is the subject of the claim is situated in this district.

## APPLICABLE LAW

7.

To the extent it is not contrary to Louisiana public policy, the parties elected in the Loan Documents made subject of this claim to apply New York substantive law to disputes arising thereunder.

## **THE LOAN DOCUMENTS**

### **THE $25,000,000 SENIOR SECURED PROMISSORY NOTE HELD BY GEOG**

8.

Moreno formed TGS to design, assemble, lease, and service turbine or gas engine power generation units for use in oil field production.

9.

To enable TGS to buy engine inventory and other equipment, TGS borrowed $25,000,000.00 from GEOG on May 13, 2013 (the "**Loan**"). To evidence the Loan, TGS, through Moreno, its authorized officer, signed and delivered to GEOG a Senior Secured Promissory Note (the "**Note**") in the face amount of $25,000,000.00. A true and correct copy of said Note is attached hereto as Exhibit "A," the terms and conditions of which are incorporated herein by reference. The Note, together with the Security Agreement and Guarantee Agreement, discussed below, constitute the "**Loan Documents**," as defined by Schedule 8 attached to the Note.

10.

TGS agreed to use the proceeds of the Loan to purchase engines to launch TGS' business, as provided in Section (4)(e) of the Note.

11.

At the Maturity Date, TGS was required to pay and satisfy the entire unpaid principal amount of the Note then outstanding to GEOG, together with all accrued and unpaid interest and other amounts due under the terms of the Note and other Loan Documents.

12.

The Note was originally scheduled to mature and become due and payable on September 13, 2013, 90 days after the original "Outside Date" of June 15, 2013, as provided in Section 2(a) of the Note and Schedule 8 attached to the Note, but TGS and GEOG agreed to extend the Maturity Date under three written amendments to the Note.

13.

In the original "Amendment to Senior Secured Promissory Note," dated June 14, 2013, and signed by TGS and GEOG, the Maturity Date of the Note was extended from September 13, 2013, to October 20, 2013. A true and correct copy of the original "Amendment to Senior Secured Promissory Note" is attached hereto as Exhibit "B," the terms and conditions of which are incorporated herein by reference.

14.

In the "Second Amendment to Senior Secured Promissory Note," dated July 22, 2013, and signed by TGS and GEOG, the Maturity Date of the Note was extended from October 20, 2013, to December 2, 2013. A true and correct copy of the "Second Amendment to Senior Secured Promissory Note" is attached hereto as Exhibit "C," the terms and conditions of which are incorporated herein by reference.

15.

In the "Third Amendment to Senior Secured Promissory Note," dated September 3, 2013, and signed by TGS and GEOG, the Maturity Date of the Note was extended from December 2, 2013, to December 29, 2013. A true and correct copy of the "Third Amendment to Senior Secured Promissory Note" is attached hereto as Exhibit "D," the terms and conditions of which are incorporated herein by reference.

## THE SECURITY AGREEMENT FAVORING GEOG

16.

To secure TGS' Obligations to perform in accordance with the Note, TGS, as "Pledgor," also executed a Security Agreement in favor of GEOG, as "Secured Party," on May 13, 2013 (the "**Security Agreement**"). A true and correct copy of the Security Agreement is attached hereto as Exhibit "E," the terms and conditions of which are incorporated herein by reference.

17.

In the Security Agreement, TGS granted GEOG a perfected security interest in "all of the following property now owned or at any time hereafter acquired by [TGS] or in which [TGS] now has or at any time in the future may acquire any right, title or interests, wherever located [...]" (collectively referred to as the "**Collateral**"):

(i) all Accounts;

(ii) all Deposit Accounts;

(iii) all Documents;

(iv) all Equipment, including, but not limited to, the equipment described in Annex A [of the Security Agreement];

(v) all General Intangibles, including, but not limited to, the agreements listed on Annex B [of the Security Agreement];

(vi) all Instruments;

(vii) all Inventory;

(viii) all Investment Property;

(ix) all Letter-of-Credit Rights;

(x) all Vehicles;

(xi) the Commercial Tort Claims described on *Schedule 1 (Commercial Tort Claims)* and on any supplement thereto received by [GEOG];

(xii) all books and records pertaining to the other property described in this [section];

(xiii) all other goods and personal property of [TGS], whether tangible or intangible and wherever located, including, but not limited to, the assets reflected on [TGS'] balance sheet attached [...] as Annex C [of the Security Agreement];

(xiv) all property of [TGS] held by [GEOG], including all property of every description, in the possession or custody of or in transit to [GEOG] for any purpose, including safekeeping, collection or pledge, for the account of [TGS] or as to which [TGS] may have any right or power; and

(xv) to the extent not otherwise included, all Proceeds.[1]

18.

GEOG perfected its security interest in the Collateral by filing a Uniform Commercial Code Financing Statement ("UCC-1") in the mortgage records of Lafayette Parish, State of Louisiana, on September 23, 2013. A true and correct copy of the UCC-1 is attached hereto as Exhibit "F," the terms and conditions of which are incorporated herein by reference.

### MORENO'S PERSONAL GUARANTEE OF THE LOAN

19.

To further secure the Loan, Moreno executed a Guarantee Agreement ("**Guarantee**") in favor of GEOG on May 13, 2013, wherein he agreed to personally guarantee the full and punctual payment and performance when due of the Obligations owed by TGS to GEOG under the Note, in the event TGS defaulted on its Obligations to perform in accordance with the terms of the Note and other Loan Documents. A true and correct copy of the Guarantee is attached hereto as Exhibit "G," the terms and conditions of which are incorporated herein by reference.

---

[1] See the Security Agreement, attached as Exhibit "E," at Section 2.

## COUNT I:
## COLLECTION OF PROMISSORY NOTE

20.

GEOG reiterates and incorporates each and every allegation in paragraphs 1-19, inclusive.

21.

Under the terms of the Note, as amended by the "Third Amendment to Senior Secured Promissory Note," the Note matured and became fully due and payable by TGS to GEOG on December 29, 2013, for all amounts due, including the principal in the amount of $25,000,000, together with interest and all other amounts as may be due under the Loan Documents.

22.

TGS failed to re-pay in full the Loan evidenced by the Note on or prior to the parties' extended Maturity Date of December 29, 2013.

23.

Under Section 6(a)(i) of the Note, attached as Exhibit "A," "the failure of Borrower to pay when due and payable (whether at maturity or otherwise) the full amount of any principal payment, interest payment or other amount due on [the] Note" constitutes an "Event of Default."

24.

Under Section 6(b) of the Note, attached as Exhibit "A," "upon occurrence of an Event of Default, (i) the Lender may declare all or any portion of the unpaid Obligations to be immediately due and payable […] and (ii) Lender may enforce any and all Liens and security interests created pursuant to the Collateral Documents and exercise all remedies thereunder."

25.

Upon TGS's default, GEOG, through undersigned counsel, made amicable demand upon TGS for delivery of collateral and payment of all amounts due and payable under the Note. True and correct copies of the demands, each dated December 30, 2013, are attached as Exhibit "H" and "I."

26.

Despite maturity of the note and amicable demand, all amounts due GEOG have not been paid by TGS or Moreno, and TGS and Moreno remain in default and each is liable to GEOG, jointly, severally, and in solido, for all amounts due under the Note and the other Loan Documents, and for delivery of the Collateral to GEOG.

27.

TGS is indebted to GEOG:

(a) for the principal Loan amount of $25,000,000, and

(b) for interest at a rate of twelve percent (12%) per annum, compounded quarterly during the life of the Loan through the Maturity Date, and

(c) for default interest at a rate of twenty percent (20%) per annum, compounded quarterly since the Maturity Date, and

(d) for reasonable attorney's fees and other costs and expenses due under the Loan Documents.

## COUNT II:
## TURNOVER OF COLLATERAL

28.

GEOG reiterates and incorporates each and every allegation in paragraphs 1-27, inclusive.

29.

TGS remains in default with respect to the Note. Through January 31, 2014, TGS was indebted to GEOG in the amount of $27,467,283.80 in principal and interest, alone. TGS' indebtedness to GEOG is continuing, as set forth under the terms of the Note.

30.

Upon an "Event of Default," Section 6(b) of the Note entitles GEOG to declare all the unpaid Obligations immediately due and payable, and to exercise all remedies under the Collateral Documents and the Loan Documents.

31.

Upon an "Event of Default," GEOG is entitled to exercise remedies under the Security Agreement, the UCC, or any other applicable law, as set forth in Section 5 of the Security Agreement.

32.

Furthermore, Federal Rule of Civil Procedure 64 authorizes this Court to utilize Louisiana state law remedies for seizing property to secure satisfaction of a potential judgment, including the remedy of judicial enforcement under La. R.S. 10:9-601.

33.

La. R.S. 10:9-601 provides that, after default, a secured party, "may reduce a claim to judgment, foreclose, execute upon, or otherwise enforce the claim [or] security interest […] by any available judicial procedure."

34.

In accordance with the Loan Documents and Louisiana law, GEOG is entitled to immediately possess all of the Collateral and offer same for public or private sale.

## COUNT III:
## ENFORCEMENT OF PAYMENT GUARANTY AGAINST DEFENDANT MORENO

35.

GEOG reiterates and incorporates each and every allegation in paragraphs 1-34, inclusive.

36.

The Guarantee provides, among other things, that: "The Individual Guarantor, as a primary obligor and not merely as a surety, unconditionally and irrevocably, guarantees to the Lender [...] the full and punctual payment and performance when due (whether at stated maturity, upon acceleration or otherwise) of the Obligations, including, without limitation, (i) the principal of and interest on the advance made to the Borrower pursuant to the Loan Agreement and (ii) all other amounts [...] payable by the Borrower under the Loan Agreement and the other Loan Documents [...]."[2]

37.

Upon TGS's default, GEOG, through undersigned counsel, made amicable demand upon Moreno to pay and satisfy all Obligations due and payable under the Guarantee. A true and correct copy of GEOG's demand dated December 30, 2013, is attached as Exhibit "I."

38.

Moreno is indebted to GEOG:

(a) for the principal Loan amount of $25,000,000, and

(b) for interest at a rate of twelve percent (12%) per annum, compounded quarterly during the life of the Loan through the Maturity Date, and

---

[2] See the Guarantee, attached as Exhibit "G," at Section 2.

(c) for default interest at a rate of twenty percent (20%) per annum, compounded quarterly since the Maturity Date, and

(d) for reasonable attorney's fees and other costs and expenses due under the Loan Documents.

39.

GEOG seeks a judgment against Moreno for all amounts due under the Note and performance of all Obligations due under the Note and pursuant to the other Loan Documents.

40.

Under the Note, Guarantee, and other Loan Documents, TGS and Moreno are liable to GEOG jointly, severally, and in solido for all amounts due and owing GEOG, including reasonable attorneys' fees incurred by GEOG, and for all costs.

**WHEREFORE,** Plaintiff, GE Oil & Gas, Inc., prays for judgment against Defendants, Turbine Generation Services, L.L.C., and Michel B. Moreno, jointly, severally, and in solido, as follows:

1. In the amount of TWENTY FIVE MILLION AND 00/100 DOLLARS ($25,000,000.00) in principal, TWO MILLION FOUR HUNDRED SIXTY SEVEN THOUSAND TWO HUNDRED EIGHTY-THREE AND 80/100 DOLLARS ($2,467,283.80) in interest as of January 31, 2014, together with interest accruing since January 31, 2014, at the Default Rate, as defined by the Note, plus all court costs incurred in this proceeding, plus reasonable attorneys' fees;

2. That the Court render judgment recognizing and maintaining the rights of GEOG to enforce the "Loan Documents," as that term is defined in the Senior Secured Promissory Note (Exhibit "A");

3. That the Court render judgment recognizing and enforcing all of GEOG's security interests in the Collateral, and that GEOG's rights be maintained as first in rank and priority as against all other persons with respect to the Collateral:

(i) all Accounts;

(ii) all Deposit Accounts;

(iii) all Documents;

(iv) all Equipment, including, but not limited to, the equipment described in Annex A of the Security Agreement;

(v) all General Intangibles, including, but not limited to, the agreements listed on Annex B of the Security Agreement and all licenses and intellectual property possessed by TGS, TGS' affiliates, or third parties;

(vi) all Instruments;

(vii) all Inventory;

(viii) all Investment Property;

(ix) all Letter-of-Credit Rights;

(x) all Vehicles;

(xi) the Commercial Tort Claims described on *Schedule 1 (Commercial Tort Claims)* and on any supplement thereto received by GEOG;

(xii) all books and records pertaining to the other property described in the Security Agreement;

(xiii) all other goods and personal property of TGS, whether tangible or intangible and wherever located, including, but not limited to, the assets reflected on TGS' balance sheet attached [...] as Annex C [of the Security Agreement];

(xiv) all property of TGS held by GEOG, including all property of every description, in the possession or custody of or in transit to GEOG for any purpose, including safekeeping, collection or pledge, for the account of TGS or as to which TGS may have any right or power; and

(xv) to the extent not otherwise included, all Proceeds.

4.	That the Court render judgment ordering and requiring the Defendants to deliver possession, custody, and control of all Collateral to GEOG, as identified in the Loan Documents, and authorizing GEOG to sell same at public or private sale in accordance with the Loan Documents and the Louisiana Uniform Commercial Code; and

5.	That the Court render judgment in favor of GEOG for such other and further relief to which it may be entitled in law and equity.

Respectfully submitted,

**ADAMS AND REESE LLP**

*/s/John M. Duck*
JOHN M. DUCK, T.A. (La. Bar #5104)
MARK R. BEEBE (La. Bar #19478)
DAVID C. COONS (La. Bar #32403)
701 Poydras Street, Suite 4500
New Orleans, Louisiana 70139
(504) 581-3234
(504) 566-0210 FAX
john.duck@arlaw.com
david.coons@arlaw.com
*Attorneys for the Plaintiff, GE Oil & Gas, Inc.*

**PLEASE SERVE**:

**Turbine Generation Services, L.L.C.,**
Through its registered agent:
FRANK SLAVICH, III
1201 Camellia Blvd., Suite 300
Lafayette, LA 70508

**Michel B. Moreno**
409 Worth Avenue
Lafayette, LA 70508