UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | | |
|---|---|---|
| GE OIL AND GAS, INC., | § | Civil Action No. 6:14-CV-00760 |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| vs. | § | Judge Rebecca F. Doherty |
| | § | |
| TURBINE GENERATION SERVICES | § | |
| LLC, and | § | |
| MICHEL B. MORENO, | § | |
| | § | |
| **Defendants.** | § | Magistrate C. Michael Hill |

## DEFENDANTS' ANSWER TO COMPLAINT AND COUNTERCLAIM AGAINST GE OIL AND GAS, INC.

**TO THE HONORABLE JUDGE OF SAID COURT:**

NOW INTO COURT, through undersigned counsel, come Turbine Generation Services LLC ("TGS") and Michel B. Moreno ("Moreno") and file this their answer to the *Complaint for Collection of Promissory Note, Recognition of Security Interests in Collateral, Turnover of Collateral, and Enforcement of Guaranty*, ("Complaint") filed by Plaintiff GE Oil and Gas, Inc., ("GEOG"), and their counterclaim against GEOG, and would respectfully show as follows:

### Parties

1.     TGS and Moreno admit the allegation contained in Paragraph 1 of the Complaint.

2.     TGS and Moreno admit the allegation contained in Paragraph 2 of the Complaint.

3.     TGS and Moreno admit the allegation contained in Paragraph 3 of the Complaint.

### Jurisdiction and Venue

4.     TGS and Moreno admit the allegation contained in Paragraph 4 of the Complaint.

5.     TGS and Moreno admit the allegation contained in Paragraph 5 of the Complaint.

6.     TGS and Moreno admit the allegation contained in Paragraph 6 of the Complaint.

**Applicable Law**

7.      TGS and Moreno admit that the "Senior Secured Promissory Note" ("Note") attached as Exhibit A to the Complaint contains a choice of law clause providing that the "Note shall be governed by, and construed in accordance with, the law of the state of New York (without giving effect to the conflict of law principles thereof)," and that the choice of law clause governs the application and construction of the "Senior Secured Promissory Note."

**The Loan Documents**

8.      Moreno formed TGS as a vehicle to carry out a joint venture between Moreno and GEOG involving the oil field power generation business.  TGS and Moreno admit the allegation contained in Paragraph 8 of the Complaint insofar as that joint venture involved the design, assembly, leasing and servicing of turbine or gas engine power generation units for use in oil field production. TGS and Moreno deny the allegation contained in Paragraph 8 of the Complaint to the extent is might be construed as suggesting that TGS was formed for any purpose other than as a vehicle to carry out the joint venture between Moreno and GEOG.

9.      TGS and Moreno admit the allegations in Paragraph 9 of the Complaint insofar as that the Note attached as Exhibit A to the Complaint is genuine and that it was signed by Moreno in his capacity as CEO of TGS and TGS's parent, Mor Doh Holdings, LLC., in the furtherance of the joint venture between Moreno and GEOG. TGS and Moreno admit that definition of "Loan Documents" in Schedule 8 of the Note includes the Security Agreement and Guaranty Agreement.   Under the joint venture agreement, GEOG's $25,000,000 "loan" was to be converted into an ownership interest in TGS.  TGS and Moreno deny the allegation contained in Paragraph 9 of the Complaint to the extent is might be construed as alleging that the "loan" was something other than a part of GEOG's contribution to the joint venture.

(2)

10.     TGS and Moreno admit the allegations in Paragraph 10 of the Complaint in that TGS agreed to use the $25,000,000 to purchase engines and launch TGS's business as provided in Section (4)(e) of the Note.  TGS and Moreno deny the allegation contained in Paragraph 10 of the Complaint to the extent it might be construed as alleging that the "loan" was something other than a part of GEOG's contribution to the joint venture.

11.     TGS and Moreno admit the allegations in Paragraph 11 of the Complaint in that under the terms of the Note the unpaid principal and interest under the Note would be due at the Maturity Date.  Beyond that, TGS and Moreno deny the allegation contained in Paragraph 11 of the Complaint because under the joint venture agreement, GEOG's interest in the Note was to be converted into an ownership interest in TGS prior to the Maturity Date.

12.     TGS and Moreno admit the Maturity Date originally scheduled for September 13, 2013, 90 days after the original "Outside Date" of June 15, 2013, and that it was extended. However, beyond that TGS and Moreno deny the allegations in Paragraph 12 because under the terms of the joint venture agreement, the amounts due under the Note were not to become due and payable, but rather were to be converted to an ownership interest in TGS.

13.     TGS and Moreno admit the Maturity Date was extended from September 13, 2013, to October 20, 2013, and that the document referenced in Paragraph 13 is genuine. However, TGS and Moreno deny the allegations in Paragraph 13 of the Complaint to the extent they may be construed as alleging that payment ever became due because under the terms of the joint venture agreement, the amounts due under the Note were not to become due and payable, but rather were to be converted to an ownership interest in TGS.

14.     TGS and Moreno admit the Maturity Date was extended from October 20, 2013, to December 2, 2013, and that the document referenced in Paragraph 14 is genuine.  However,

(3)

TGS and Moreno deny the allegations in Paragraph 14 of the Complaint to the extent they may be construed as alleging that payment ever became due because under the terms of the joint venture agreement, the amounts due under the Note were not to become due and payable, but rather were to be converted to an ownership interest in TGS.

15.     TGS and Moreno admit the Maturity Date was extended from December 2, 2013, to December 29, 2013, and that the document referenced in Paragraph 15 is genuine.  However, TGS and Moreno deny the allegations in Paragraph 15 of the Complaint to the extent they may be construed as alleging that payment ever became due because under the terms of the joint venture agreement, the amounts due under the Note were not to become due and payable, but rather were to be converted to an ownership interest in TGS.

### The Security Agreement Favoring GEOG

16.     TGS and Moreno admit that the Security Agreement referenced in Paragraph 16 and attached as Exhibit E to the Complaint is a true and correct copy and that it was executed by TGS in favor of GEOG.

17.     TGS and Moreno admit the allegations in Paragraph 17 of the Complaint.

18.     TGS and Moreno admit the allegations in Paragraph 18 of the Complaint.

### Moreno's Personal Guarantee of the Loan

19.     TGS and Moreno admit that Moreno executed the Guarantee Agreement referenced in Paragraph 19 of the Complaint, and that Exhibit G to the Complaint is a true and correct copy of the Guarantee Agreement.  However, TGS and Moreno deny the allegations in Paragraph 19 of the Complaint to the extent they may be construed as alleging that payment ever became due because under the terms of the joint venture agreement, the amounts due under the

Note were not to become due and payable, but rather were to be converted to an ownership interest in TGS.

## Count I
## Collection of Promissory Note

20.    No response to Paragraph 20 of the Complaint is required.

21.    TGS and Moreno admit the allegations in Paragraph 21 of the Complaint to the extent it alleges a December 29, 2013 Maturity Date under the terms of the Loan. TGS and Moreno deny that they are liable on the Note.

22.    TGS and Moreno admit the allegations in Paragraph 22 of the Complaint. TGS and Moreno deny that they are liable on the Note.

23.    TGS and Moreno admit that Paragraph 23 of the Complaint accurately quotes from Section 6(a)(i) of the Note.

24.    TGS and Moreno admit that Paragraph 24 of the Complaint accurately quotes from Section 6(b) of the Note.

25.    TGS and Moreno admit the allegations in Paragraph 25 of the Complaint that GEOG made a demand for delivery of collateral and payment on the Note.  TGS and Moreno deny that they are liable on the Note.

26.    TGS and Moreno deny the allegations in Paragraph 26 of the Complaint.

27.    TGS and Moreno deny the allegations in Paragraph 27 of the Complaint.

## Count II
## Turnover of Collateral

28.    No response to Paragraph 28 of the Complaint is required.

29.     No response is required to an allegation of the amount of damages.  FED. R. CIV. P. 8(b)(6).  To the extent a response is required to Paragraph 29 of the Complaint, TGS and Moreno deny that they are liable on the Note.

30.     TGS and Moreno admit that Paragraph 30 of the Complaint accurately reflects what Section 6(b) of the Note says regarding "Event of Default."

31.     TGS and Moreno admit that Paragraph 31 of the Complaint accurately reflects what Section 5 of the Security Agreement says regarding "Event of Default."

32.     TGS and Moreno admit the allegation in Paragraph 32 of the Complaint that Federal Rule of Civil Procedure 64 authorizes the Court to utilize appropriate state law remedies.

33.     TGS and Moreno admit that Paragraph 33 of the Complaint accurately relates the content of La. R.S. 10:9-601.

34.     TGS and Moreno deny the allegations in paragraph 34 of the Complaint.

**Count III**
**Enforcement of Payment Guaranty Against Defendant Moreno**

35.     No response to Paragraph 35 of the Complaint is required.

36.     TGS and Moreno admit that Paragraph 36 accurately quotes from the Guarantee Agreement attached as Exhibit G to the Complaint.

37.     TGS and Moreno admit allegations in Paragraph 37 of the Complaint that GEOG made a demand for delivery of collateral and payment on the Note.  TGS and Moreno deny that they are liable on the Note.

38.     TGS and Moreno deny the allegations in Paragraph 38 of the Complaint.

39.     No response is required to Paragraph 39 of the Complaint.

40.     TGS and Moreno deny the allegations in Paragraph 40 of the Complaint.

(6)

## AFFIRMATIVE DEFENSE

### Estoppel

41.     GEOG's claims fail under the doctrine of equitable estoppel and/or promissory estoppel.

42.     In the joint venture agreement between Moreno and GEOG, GEOG made a promise to TGS and Moreno that the $25,000,000 "loan" that is the subject of this lawsuit would not actually be repaid, but would be would be converted into an ownership interest in TGS.

43.     At the time they executed the Note, TGS and Moreno were not aware that GEOG would not carry through on its promises under the joint venture agreement.

44.     In executing the Note, TGS and Moreno reasonably and substantially relied on GEOG's promise to convert the amounts owing under the Note to an ownership interest in TGS.

45.     GEOG was aware that substantially all of TGS's assets would be tied up in the equipment purchased with the proceeds of the Note, and that repayment at the Maturity Date would not be feasible.  GEOG knew or should have known that Moreno and GEOG would rely on its promise to convert the Note to an ownership interest in TGS.

46.     Injustice can be avoided only by enforcing GEOG's promise.

### DEFENDANTS' COUNTERCLAIMS

### Facts

47.     Moreno was affiliated with Green Field Energy Services, Inc., a Delaware corporation ("GFES").  The business of GFES was situated in Louisiana and essentially had two divisions, an oil fracing division and a power generation division.  Around October of 2012, Moreno approached GEOG about the possibility of forming a joint venture/partnership involving both the fracing and power generation business.

(7)

48.     Over the following months, the courtship between GEOG and Moreno grew intensely.  Moreno dealt directly with the highest personnel at GEOG's parent company, General Electric Co. ("GE"). Moreno even attended General Electric Worldwide Conference in Florence, Italy, where Moreno and the president of GEOG made a joint presentation to GE's 200 largest customers. Discussions regarding the terms and conditions of the joint venture relationship continued.  Ultimately, GEOG and Moreno decided to form a joint venture relationship around the power generation business only.  The relationship was known internally as Project Cayenne. The business centered around taking old helicopter turbines used in the Iraq and Afghanistan wars and modifying the engines to be used in the oil fields of Texas and other shale oil plays around the country.  The turbines are fueled with natural gas from the wellhead, thus avoiding the cost of providing diesel to the well site.  The plan for the joint venture was to ramp up production and use the turbines and then sell the company in four years.  GEOG's calculations reflected that the joint venture business could have substantial net worth in four years.

49.     After presentment of the "corporate opportunity" to GFES, which GFES declined, Moreno, through MOR DOH Holdings, LLC, ("MMH") (which, at the time was 100% owned by two trusts owned by Moreno and his wife),  formed TGS to continue the joint venture relationship with GEOG, with TGS being the vehicle through which the joint venture would operate.

50.     On or about May 13, 2013, the terms of the joint venture agreement between GEOG and Moreno were agreed upon.  Those terms are generally set out in the "Term Sheet," attached as Annex B to Exhibit A to the Complaint.  The terms included, among other things, a $25 million loan from GEOG to TGS, which was to be converted into TGS preferred stock. Ultimately, GEOG was to invest $100 million in the joint venture for a 50% stake in TGS.  In

(8)

accordance with the joint venture agreement and the terms of the Note, TGS used the $25 million to purchase the turbines and other equipment.

51.     On or about November of 2013, GFES filed for Chapter 11 bankruptcy. Apparently spooked by this, GEOG informed Moreno that it did not want to pursue Project Cayenne and, on December 30, 2013, sent a demand for payment on the Note.  GEOG informed Moreno that the demand was just a "formality," and inquired as to when he could find additional investors and/or partners so the business cold become profitable and the Note repaid.

**Term Sheet Memorializes a Joint Venture or Partnership Agreement**

52.     The eleven (11) page Term Sheet memorializes a joint venture agreement, with TGS being the vehicle through which the joint venture was to do business. The Term Sheet is incorporated by reference as if copied herein verbatim.

53.     The Term Sheet shows that the parties intended to create a partnership or joint venture agreement.  For instance, under the heading of TGS Tax Treatment, the Term Sheet says:

> TGS will be treated as a partnership for US tax purposes and none of TGS, its directors or officers, Moreno, MMH or any of their affiliates will take any action that may result in TGS not being treated as a partnership (*e.g.*, filing a "check the box" election to treat TGS as a corporation for US tax purposes).

> The parties will discuss and agree to relevant partnership tax provisions (including income allocation and IRC Section 704(c) methods) prior to the completion of the First Contribution.

54.     The Term Sheet shows a community of interest and a combination of property, financial resources, effort, skill or knowledge in support of the joint undertaking.

55.     The Term Sheet shows an agreement to share profits and losses.  While the Distribution Waterfall set out in the Term Sheet calls for a repayment of investment first, it ultimately provides both parties with the right to share in the profits.  The Term Sheet provided

that GEOG would contribute up to $100 million (including conversion of the Loan to Preferred Interests in TGS) which would not be repaid if the business failed, and Moreno's contribution would likewise be lost if the business failed.

56.     The Term Sheet shows a mutual right of control over the joint venture. The Term Sheet provides that both GEOG and MMH be represented on the Board of Managers, and although the Term Sheet allows MMH 3 members to GEOG's 2 (with 2 independent members appointed by the Board of Managers), the term Sheet also provides that the approval of GE's designee is required for a number of actions.

## Count I
## Breach of Fiduciary Duty

57.     Moreno and TGS reiterate and incorporate by reference the factual allegations contained in their answer and counterclaim.

58.     Moreno and GEOG had agreed to be partners or joint venturers, and partners and joint venturers owe one another a fiduciary duty.

59.     Under the terms of the Note, the proceeds of the note were to be used solely to purchase the engines listed in Annex A, pay fees and expenses of the Lender under the Note, or for any other purposes agreed to be the Lender.  Upon consummation of the "First Contribution," all obligations under the Note "shall be exchanged for Preferred Interests in accordance with the terms of the Term Sheet," and the Note cancelled and surrendered to the Borrower.

60.     According to the "GE Loan and Contributions to TGS" section of the Term Sheet, GEOG was supposed to make the "First Contribution" of $50 million for Preferred Interests on or about June 15, 2013, subject to certain terms specified in the Term Sheet, including obtaining

(10)

consent of the shareholders and directors of GFES, which consent was dated May 13, 2013. Satisfaction of the other terms was either partly or wholly in GEOG's hands.

61.     GEOG breached its fiduciary duty to Moreno by failing to put forth a good faith effort to complete the prerequisites for the First Contribution after Moreno had performed his part of the bargain and TGS invested the loan proceeds in equipment as required under the Note.

62.     Moreno and TGS suffered significant damages as a result of GEOG's breach of its fiduciary duty, including lost profits and a diminution of the value of his interest in TGS.

**Count II**
**Breach of Partnership/Joint Venturer Duties**

63.     Moreno and TGS reiterate and incorporate by reference the factual allegations contained in their answer and counterclaim.

64.     GEOG breached its duty of care under the law and under the partnership/joint venture agreement by failing to put forth a good faith effort to complete the prerequisites for the First Contribution after Moreno had performed his part of the bargain and TGS invested the loan proceeds in equipment as required under the Note.

65.     GEOG's behavior constituted a breach of its duty of care because GEOG failed to act with the care that an ordinarily prudent person would exercise in similar circumstances. In addition, GEOG failed to act in good faith; GEOG did not believe and could not have reasonably believed that such conduct would be in the best interest of the partnership/joint venture.

66.     Moreno and TGS suffered damages as a result of GEOG's breach because GEOG's breach deprived the partnership/joint venture of the funds necessary to operate as a business, and left Moreno potentially personally liable to GEOG for the $25,000,000 plus interest and collection expenses under the Guarantee Agreement.  Moreover, but for GEOG's

(11)

breach, Moreno would have owned a 50% share of a business that by GEOG's own estimate could have substantial net worth in four years, as planned.

**Count III**
**Breach of Agreement to Form Partnership/Joint Venturer**

67.     Moreno and TGS reiterate and incorporate by reference the factual allegations contained in their answer and counterclaim.

68.     In the alternative, Moreno pleads a breach of an agreement to form a joint venture and/or partnership.

69.     GEOG agreed to enter into a joint venture and/or partnership with Moreno under the general terms outlined in the Term Sheet.

70.     All conditions precedent to the formation of the joint venture and/or partnership have been performed or have occurred.

71.     In accordance with that agreement, Moreno executed the Note in his capacity as TGS's C.E.O., and as the C.E.O. of TGS's parent, and TGS used the proceeds of the Note to purchase equipment to conduct the business of the joint venture and/or partnership.

72.     Rather than make the First Contribution and convert the Note to an ownership interest in TGS, GEOG breached the agreement to form a joint venture and/or partnership by refusing to make the First Contribution and demanding payment on the Note.

73.     If GEOG had not breached its agreement to form a joint venture and/or partnership with Moreno, the joint venture and/or partnership would have been duly formed.  As a result of GEOG's breach, Moreno suffered damages by losing the value his interest in the joint venture and/or partnership.  But for GEOG's breach, Moreno would have owned a 50% share of

(12)

a business that by GEOG's own estimate could have substantial net worth in four years, as planned.

## Count IV
## Promissory Estoppel

74.    Moreno and TGS reiterate and incorporate by reference the factual allegations contained in their answer and counterclaim.

75.    In the joint venture agreement between Moreno and GEOG, GEOG made a promise to TGS and Moreno that the $25,000,000 "loan" that is the subject of this lawsuit would not actually be repaid, but would be converted into an ownership interest in TGS.

76.    In executing the Note, TGS and Moreno reasonably and substantially relied on GEOG's promise to convert the amounts owing under the Note to an ownership interest in TGS.

77.    GEOG was aware that substantially all of TGS's assets would be tied up in the equipment purchased with the proceeds of the Note, and that repayment at the Maturity Date would not be feasible.  GEOG knew or should have known that Moreno and GEOG would rely on its promise to convert the Note to an ownership interest in TGS.

78.    In reliance on GEOG's promise, TGS and Moreno used the $25,000,000 to purchase Honeywell engines and other equipment in furtherance of the joint venture.  When GEOG demanded payment on the Note rather than converting the Note to an ownership interest in TGS, that reliance proved significantly detrimental to TGS and Moreno because the funds GEOG demanded in repayment of the Note were all tied up in equipment.

79.    TGS and Moreno have incurred, and will continue to incur damages as a result of reliance on GEOG's promise, as well as attorneys' fees.

80.    Injustice can be avoided only by enforcing GEOG's promise.

## PRAYER FOR RELIEF

81.     WHEREFORE, PREMISES CONSIDERED, TGS and Moreno pray that GEOG take nothing on its *Complaint for Collection of Promissory Note, Recognition of Security Interests in Collateral, Turnover of Collateral, and Enforcement of Guaranty*, that GEOG be cited to appear and answer herein to the foregoing counterclaim, and that upon final hearing hereof, that TGS and/or Moreno do have and recover judgment of and from GEOG in such amounts, pursuant to the foregoing allegations, as the evidence may show proper, together with interest thereon at the legal rate, costs of court, and for such other and further relief, general and special, at law or in equity, to which TGS and/or Moreno may be justly entitled:

    a.     General, special, actual, exemplary, incidental, and consequential damages;

    b.     Compensatory and expectation interests;

    c.     Out-of-pocket damages;

    d.     Prejudgment interest as provided by law;

    e.     Postjudgment interest as provided by law;

    f.     All costs of these proceedings;

    g.     Reasonable and necessary attorneys' fees; and

    h.     Such other and further relief to which TGS and/or Moreno may be justly entitled at law or in equity.

(14)

Respectfully submitted,

PROVOST★UMPHREY
LAW FIRM, L.L.P.
490 Park Street
P. O. Box 4905
Beaumont, Texas   77704
Phone No. (409) 835-6000
Direct Fax No. (409) 813-8633

By:_____

David P. Wilson
LA State Bar No. 32775
Michael A. Havard
Texas State Bar No. 09238080

Richard J. Hymel
LA State Bar No. 20230
MAHTOOK & LAFLEUR, L.L.C.
1000 Chase Tower, 600 Jefferson Street
Post Office Box 3089
Lafayette, LA 70502
Phone No. (337) 266-2177
Fax No. (337) 266-2303

ATTORNEYS FOR DEFENDANTS

(15)

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has on this the 16th day of May, 2014, been forwarded to all counsel of record by electronic filing.

_____

DAVID P. WILSON

(16)